COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Felton and McClanahan
Argued at Salem, Virginia


HERBERT DALE DOTSON
                                                      OPINION BY
v.       Record No. 2474-04-3              JUDGE WALTER S. FELTON, JR.
                                                   DECEMBER 20, 2005
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
Keary R.Williams, Judge

Robert M. Galumbeck (Galumbeck, Necessary, Dennis & Kegley, on
brief), for appellant.

Leah A. Darron, Assistant Attorney General (Judith Williams
Jagdmann, Attorney General, on brief), for appellee.


Herbert Dotson (appellant) appeals his conviction, following his conditional guilty plea,[1]

of possession of more than one-half (1/2) ounce but less than five pounds of marijuana with the

intent to distribute.  He contends that the trial court erred in failing to suppress evidence seized

by the Commonwealth during a search of his residence pursuant to a search warrant.  Finding no

error, we affirm the judgment of the trial court.

BACKGROUND

On appeal, we review the evidence in the light most favorable to the party prevailing

below, here the Commonwealth, together with all reasonable inferences that may be drawn

therefrom.  See Smith v. Commonwealth, 41 Va. App. 704, 712, 589 S.E.2d 17, 21 (2003).

Applying that principle, the evidence showed that in July 2003, after receiving information from

a reliable informant that appellant was "running a decent business selling marijuana and drugs"

_____
       [1] See Code § 19.2-254.

from his residence, Joe Fuller (Fuller), a member of the 29th Narcotics Task Force and an investigator with the Buchanan County Sheriff's Department, secured a warrant to search appellant's residence for drugs and items related to the possession or manufacture of drugs.

During the execution of the warrant, officers seized drug paraphernalia and other drug-related items they found in the living room of the residence. They also seized a small locked fireproof safe they found in the same area. Because they were unable to open the small safe at appellant's residence, they took it to the Narcotics Task Force office where it remained for approximately fifteen days until a locksmith was located to open it. Inside the safe, the officers discovered almost eight ounces of marijuana.

Appellant was indicted for possession of more than one-half (1/2) ounce but less than five pounds of marijuana with intent to distribute, in violation of Code § 18.2-248.1. Prior to trial, he moved to suppress the evidence seized pursuant to the warrant, particularly the marijuana found in the small locked safe. The trial court denied the motion to suppress and convicted appellant on his conditional guilty plea to the indictment. This appeal followed.

ANALYSIS

I.

Appellant argues on appeal that the trial court erred in denying his motion to suppress evidence seized as a result of the search of his house pursuant to a search warrant, particularly the seizure of the small locked safe, an item not named in the warrant as an object of the search. He further argues that the officers lacked probable cause to seize the safe because they had no reasonable belief that any item named in the search warrant was likely to be found within it. He also contends that prior to opening the locked safe, the Commonwealth was required to obtain

either an additional warrant or permission from the owner to search the safe, neither of which occurred.[2] For the following reasons, we affirm the trial court.

On appeal, the burden of proving the trial court erred in denying a motion to suppress lies with appellant, McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*), and the decision of the trial court will be disturbed only if plainly wrong. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). On appeal, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)). Whether the seizure of the evidence from appellant was constitutionally valid involves a question of law which we review *de novo* on appeal. See Ornelas, 517 U.S. at 699.

Appellant's argument, that the officers exceeded the scope of the search warrant by seizing the small locked safe from his residence because the safe was not named as a search item in the warrant, is without merit.

"The permissible scope of a search is limited by the terms of the warrant pursuant to which it is conducted." Kearney v. Commonwealth, 4 Va. App. 202, 204, 355 S.E.2d 897, 898 (1987). However, "[a] search warrant . . . is not invalid merely because officers seize items not named in the warrant." Cherry v. Commonwealth, 21 Va. App. 132, 138-39, 462 S.E.2d 574, 577 (1995) (citations omitted).

---

[2] At oral argument, appellant contended that because fifteen days passed without searching the locked safe, the search warrant was "stale," requiring the officers to get an additional warrant. However, appellant failed to raise the issue of staleness at trial and, thus, we do not consider that matter on appeal. See Rule 5A:18.

Here, the warrant described with particularity the items for which the search of appellant's residence was to be made, specifying items related to the possession, distribution, or manufacture of marijuana, or any other illicit drugs.[3] "[A] search may be as extensive as reasonably required to locate the items described in the warrant." Kearney, 4 Va. App. at 205-06, 355 S.E.2d at 899 (citations omitted). Or, as stated by one court, "[t]he permitted scope of a search is, logically, whatever is necessary to serve the purpose of that particular search, but [d]on't look for an elephant in a matchbox." Wilkerson v. State, 594 A.2d 597, 605 n.3 (Md. App. 1991) (quotations omitted).

In the course of conducting the search of appellant's residence, the officers observed the small portable safe in plain view in the living room of appellant's residence. Fuller explained that, in his experience, when police find a safe during a search of a residence in a narcotics case, "most of the time there's money, records, or drugs in the safe." Clearly, the safe was a container that officers reasonably believed contained items specified in the warrant, particularly illicit drugs, drug paraphernalia, and records of illegal drug sales. Stated differently, the officers were not searching for an elephant in a matchbox.

Appellant's reliance upon Shearer v. Commonwealth, 9 Va. App. 394, 388 S.E.2d 828 (1990), and Arizona v. Hicks, 480 U.S. 321 (1987), is misplaced. In Shearer, the police searched a residence pursuant to a warrant for clothing suspected to have been worn by an intruder in a break-in at a shopping mall. During that search, police found a metal cash box in a dresser drawer that matched the description of one taken during a recent unrelated burglary. Shearer told police that he purchased the metal box, knew it was stolen, but did not identify the seller. We

---

[3] The warrant authorized the search of "Dale Dotson [and] a gray single wide trailer" for "Marijuana, Marijuana plants, seeds or any other Illegal Drugs, durg [sic] Paraphenalia [sic], weapons, monies, growing equipment, records, or other information pertient [sic] to the possession, distribution or manufacturing of marijuana or any other drugs."

held that the box was found "in plain view"[4] and subject to seizure as identifiable contraband, despite not being named in the warrant. When officers opened the metal box, they found car keys that had been stolen in a separate burglary. While concluding that the metal box could not be seized pursuant to the search warrant for clothing, as it was not an item specified in the search warrant, we held that because the officers found the metal box in "plain view" during the search for clothing and recognized it as stolen property, they had authority to seize it as contraband. We noted that the metal box was discovered in a place where the police had a lawful right to be under the authority of the search warrant.

In Hicks, the officers were lawfully in an apartment without a warrant and, while there, moved stereo equipment to locate serial numbers that they then used to determine the equipment was stolen. The United States Supreme Court held that the officers lacked probable cause to believe that the equipment was contraband prior to searching for the serial numbers, and, therefore, the seizure of the stereo equipment violated the Fourth Amendment. While the officers were in a place they had a lawful right to be, the serial numbers were not in "plain view."

Here, officers conducted the search of appellant's residence pursuant to a search warrant listing "Marijuana, Marijuana plants, seeds or any other Illegal Drugs, durg [sic] Paraphenalia [sic], weapons, monies, growing equipment, records, or other information pertient [sic] to the

---

[4]    [T]he "plain view" exception to the Fourth Amendment warrant requirement . . . [provides] . . . that a law enforcement officer can seize evidence of a crime or contraband when it is discovered inadvertently in a place where the officer has a right to be. The "plain view" exception "authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity."

Shearer, 9 Va. App. at 403, 388 S.E.2d at 832-33 (citations omitted).

possession, distribution or manufacturing of marijuana or any other drugs" as objects of the search. The small locked safe was in plain view, and the officers could reasonably expect to find those items within the safe.

## II.

Appellant's argument that the officers needed a separate warrant to open the locked safe once it was removed from the searched premises is also without merit. It is clear that if the safe had been unlocked when officers at the scene seized it, they would have been permitted to open it to determine if it contained any of the items particularized in the search warrant. The scope of a lawful search of premises described in a warrant "'extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search.'" Kearney, 4 Va. App. at 205, 355 S.E.2d at 899 (quoting United States v. Ross, 456 U.S. 798, 820-21 (1982)). Other courts considering whether a search warrant also permits the search of locked containers, found during the search and likely to contain items specified in the warrant, have consistently concluded that it does. See United States v. Snow, 919 F.2d 1458, 1461 (10th Cir. 1990) (holding that a "locked safe was a likely source for the specified documents and could therefore be opened"); United States v. O'Neill, 27 F. Supp.2d 1121, 1135 (E.D. Wis. 1998) (search warrant for firearms permitted search of locked safe and locked opaque canvas bag "as long as those items could possibly fit in the safe or the opaque bag"); United States v. Harris, 961 F. Supp. 1127, 1134 (S.D. Ohio 1997) (search of residence for vials of bacteria extended to car parked in front of the house and "authorized [the officers] to open the [vehicle's] locked glove box because vials are small enough to fit in that compartment"); Green v. State, 676 N.E.2d 755, 759 (Ind. Ct. App. 1996) (search warrant for illegal pornographic photographs in defendant's residence authorized officers

to seize locked safe from the premises because "a second warrant to search the safe was not necessary").

Here, we conclude that it was reasonable for the officers to believe that items listed in the warrant could be found in the locked safe located during the search. We also conclude that the officers did not exceed the scope of the search authorized by the warrant by delaying some fifteen days to open the safe after it was seized and removed to police property. See United States v. Johns, 469 U.S. 478 (1985) (search of vehicle held in police custody three days after seizure held to be valid). Fuller explained that the delay resulted because of his difficulty locating a locksmith in a rural area to open the safe. Moreover, the locked safe was portable, and could have been easily removed from the scene by others if the officers left it there. There was a substantial likelihood that items named in the search warrant, including drugs, drug-related items, money, and records of appellant's suspected drug business would be found within the safe. Under these circumstances, we hold that the trial court correctly found that the removal of the small safe from the searched premises, and its being opened by the officers some fifteen days later, did not violate appellant's Fourth Amendment protections.

CONCLUSION

We hold that the seizure of the safe during execution of the search warrant was reasonable and within the scope of the warrant. Furthermore, we conclude from this record that the subsequent search of the safe and seizure of its contents at the narcotics task force office fifteen days after it was removed from the searched premises was reasonable. The trial court did not err in denying appellant's motion to suppress. Accordingly, we affirm the judgment of the trial court.

Affirmed.