UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Malveaux and Duffan

TYREE WILSON MASON

MEMORANDUM OPINION[*] BY
v.     Record No. 2005-24-2      CHIEF JUDGE MARLA GRAFF DECKER
FEBRUARY 3, 2026
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF NEW KENT COUNTY
B. Elliott Bondurant, Judge

(Charles E. Haden, on brief), for appellant.

(Jason S. Miyares,[1] Attorney General; Justin B. Hill, Assistant
Attorney General, on brief), for appellee.

Following his conditional guilty plea, Tyree Wilson Mason was convicted of possessing a

controlled substance with intent to distribute in violation of Code § 18.2-248. On appeal, Mason

challenges the trial court's denial of his motion to suppress evidence that he contends was seized

in violation of the Fourth Amendment of the United States Constitution and Code § 19.2-56. We

hold that the trial court did not err, and we affirm Mason's conviction.[2]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] Having examined the briefs and record here, the panel unanimously holds that oral
argument is unnecessary. "[T]he facts and legal arguments are adequately presented in the briefs
and record, and the decisional process would not be significantly aided by oral argument." *See*
Code § 17.1-403(ii)(c); Rule 5A:27(c).

Richmond City Police Detective Sean Alston conducted surveillance of Tyree Mason over the course of about six months.  During that period, Alston observed Mason engage in drug activity. Every day, Mason drove from his house in New Kent County to Richmond.  In Richmond, Alston "conducted control[led drug] buys" with Mason and observed Mason making "hand to hand" transactions.

Based on his observations, Alston applied for a search warrant for Mason's house in New Kent County, supported by a lengthy and detailed affidavit of his surveillance efforts.  A magistrate issued a search warrant on June 30, 2023, that stated the physical address of Mason's house in New Kent as the place to be searched and described the residence.  The warrant authorized the executing officers to seize the following items:

> Any controlled substance, paraphernalia used in the preparation, packaging and distribution of a schedule I/II substance.  Any instruments used in the illegal drug trade and fruits . . . of sale.  Any electronic devices used to aid in the distribution, any firearms and ammunition, drug ledgers, equipment used to facilitate narcotics trafficking and curtilage.[4]

The supporting affidavit noted that vehicles and sheds in the yard of the property were also subject to search.

Alston coordinated with New Kent deputies, Richmond police officers, Virginia State troopers, and "task force officers" before executing the search warrant because his surveillance

---

[3] The appellate court recites the facts "in the light most favorable to the Commonwealth," the prevailing party in the trial court. *Commonwealth v. Hubbard*, ___ Va. ___, ___ (Sept. 11, 2025) (quoting *Commonwealth v. White*, 293 Va. 411, 413 (2017)).   In doing so, the Court discards any evidence that conflicts with the Commonwealth's evidence "and regard[s] as true all the credible evidence favorable to the Commonwealth and all . . . inferences" that can be fairly drawn from that evidence. *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018) (per curiam)).

[4] We assume that the last "item" listed, curtilage, is a scrivener's error.  Certainly, the issuing authority did not intend for officers to seize the curtilage of the house.

operation involved multiple jurisdictions. When police executed the warrant on July 6, 2023, approximately ten vehicles were parked on the property. One of those vehicles was an SUV parked ten to fifteen feet away from the house. The SUV was registered to Mason, and Detective Alston had seen Mason drive it the day before. Police found twenty-eight grams of fentanyl in the SUV. Two firearms were also found in an outbuilding on the property.

Mason was charged with possession of a controlled substance with intent to distribute and possession of a firearm as a convicted felon. In the trial court, Mason made a motion to suppress the evidence discovered during the search. He argued that the warrant did not meet the particularity requirement describing the places to be searched and items to be seized. He contended that the warrant authorized the search of "a place of abode" and reasoned that the vehicles and outbuildings on the property were not subject to the warrant. Finally, Mason claimed that the warrant was not executed in a timely manner and was therefore stale when the officers conducted the search. The court denied Mason's motion.

Mason later pleaded guilty to possession of a controlled substance with intent to distribute, preserving his right to challenge the trial court's suppression ruling. In exchange for his guilty plea, the Commonwealth agreed to nolle prosequi Mason's charge for illegally possessing a firearm. The court accepted Mason's plea and sentenced him to thirty years of incarceration with twenty-five years and eight months suspended.

ANALYSIS

When reviewing a trial court's denial of a motion to suppress, "[t]his Court is 'bound by the trial court's findings of historical fact unless plainly wrong or without evidence to support them.'" *Moreno v. Commonwealth*, 73 Va. App. 267, 274 (2021) (quoting *Williams v. Commonwealth*, 71 Va. App. 462, 475 (2020)). At the same time, the Court reviews "the trial court's application of legal principles" to those facts de novo. *Harvey v. Commonwealth*, 76

Va. App. 436, 462 (2023). And ultimate legal conclusions are reviewed de novo. *See, e.g.*, *Washington v. Commonwealth*, 60 Va. App. 427, 434 (2012).

Here, the instant search was executed pursuant to a warrant. "A judicially issued search warrant is entitled to a 'presumption of validity,' and a defendant challenging a resulting search bears the burden of rebutting that presumption." *Harvey*, 76 Va. App. at 461 (quoting *Brown v. Commonwealth*, 68 Va. App. 517, 524 (2018)). "[T]he Fourth Amendment's strong preference for searches conducted pursuant to a warrant" imposes this deferential standard on an appellant's challenge to a warrant. *Taylor v. Commonwealth*, 66 Va. App. 619, 631 (2016) (quoting *Anzualda v. Commonwealth*, 44 Va. App. 764, 775 (2005) (en banc)). It is the appellant's burden to show that when viewing the evidence in the light most favorable to the Commonwealth, the trial court committed reversible error. *Cole v. Commonwealth*, 294 Va. 342, 354 (2017).

This well-established law provides the lens through which we view Mason's challenges to the search.

### I. Particularity of Place to be Searched and Scope of the Warrant

Mason argues that "the search warrant failed to state with sufficient particularity the places to be searched." He also contends that "the warrant was unconstitutionally overbroad as it pertains to the authorization to search any shed and cars near Mason's residence."[5]

A valid warrant must state with particularity the places to be searched. *See* U.S. Const. amend. IV; Code § 19.2-56(A). And "[t]he permissible scope of a search is limited by the terms

---

[5] The only contraband found within the outbuilding was firearms—evidence related to a charge that was nolle prossed. This evidence was neither admitted at trial nor proffered by the Commonwealth in support of the guilty plea. As such, the trial court's decision that evidence discovered in the search of the shed was admissible is not a proper subject for appeal. For this reason, we do not determine whether the search of the outbuilding was valid. *See Shaw v. Commonwealth*, 304 Va. 217, 233 (2025) (noting that judicial restraint requires cases to be decided on the best and narrowest grounds).

of the warrant pursuant to which it is conducted." *Kearney v. Commonwealth*, 4 Va. App. 202, 204 (1987). "Ordinarily, a description in a warrant of a dwelling at a certain place is taken to include the area within the curtilage of that dwelling." *Glenn v. Commonwealth*, 10 Va. App. 150, 157 (1990) (quoting 2 Wayne R. LaFave, *Search and Seizure* § 4.10(c), at 322 (1987)). As a result, "a search warrant authorizing the search of a dwelling covers the occupant's automobiles found within the curtilage of those premises, even where the vehicle is not named in the warrant." *Id.* at 156.

Curtilage is well-defined within the law. It "is 'the area "immediately surrounding and associated with the home."'" *Poulson v. Commonwealth*, 304 Va. 188, 197 (2025) (quoting *Florida v. Jardines*, 569 U.S. 1, 6 (2013)); *see Collins v. Virginia*, 584 U.S. 586, 592 (2018). It "is 'a space necessary and convenient, habitually used for family purposes and the carrying on of domestic employment; the yard, garden or field which is near to and used in connection with the dwelling.'" *Poulson*, 304 Va. at 197 (quoting *Wellford v. Commonwealth*, 227 Va. 297, 302 (1984)); *see Kearney*, 4 Va. App. at 205.

The warrant here provided the physical address of Mason's residence as the place to be searched. The SUV in which the controlled substances were found was registered to Mason. It was parked only ten to fifteen feet from the house identified as his and named in the warrant. On this record, the trial court found the vehicle was within the curtilage of the house. This finding was supported by the evidence and was not plainly wrong. Consequently, the trial court properly determined that the search of the SUV was permissible because "a warrant authorizing the search

of a dwelling is sufficient to justify the search of an occupant's vehicle parked within the curtilage."[6] *See Glenn*, 10 Va. App. at 156.

## II. Particularity of Items to be Seized

Mason claims that the warrant did "not include . . . 'a particular description' of the things to be seized."

"The Fourth Amendment proscribes general warrants." *Harvey*, 76 Va. App. at 463. A valid warrant must state with particularity the items to be seized. *See* U.S. Const. amend. IV; Code § 19.2-56(A). Nevertheless, the "'degree of specificity required'" to identify the items subject to seizure "depends on the circumstances and type of evidence sought in each case, and 'a practical margin of flexibility [is] permitted.'" *Harvey*, 76 Va. App. at 463 (alteration in original) (quoting *Morke v. Commonwealth*, 14 Va. App. 496, 500 (1992)). "Search warrants 'limit[ing] the executing officers' discretion by directing them to seize only evidence of a specific crime consistently have been held to satisfy the particularity requirement.'"[7] *Id.* (alteration in original) (quoting *Morke*, 14 Va. App. at 501).

The warrant at issue here directed officers to seize the following items:

> Any controlled substance, paraphernalia used in the preparation, packaging and distribution of a schedule I/II substance. Any instruments used in the illegal drug trade and fruits . . . of sale. Any electronic devices used to aid in the distribution, any firearms and

---

[6] In light of this holding, we do not consider if any deficiency on the face of the warrant was cured by the affidavit. *See generally* Code § 19.2-56(A) ("The judge . . . shall attach a copy of the affidavit . . . , which shall become a part of the search warrant . . . ."); *Shaw*, 304 Va. at 233 (emphasizing the importance of judicial restraint).

[7] Mason's claim that seized property must be described with "scrupulous exactitude" comes from a case in which the property to be seized was books. *See Stanford v. Texas*, 379 U.S. 476, 485 (1965). The United States Supreme Court found that such particularity was necessary when the basis for seizure of such items was in "the ideas which they contain." *Id.* Such specificity, in that narrow context, is necessary to vindicate First Amendment principles. *Id.* Mason's assertion that items to be seized be described with "scrupulous exactitude" has no relation to the seizure of items like "weapons[ and] narcotics." *See id.* at 486.

> ammunition, drug ledgers, equipment used to facilitate narcotics trafficking . . . .

The warrant's description of the items to be seized sufficiently "limit[ed] the executing officers' discretion by directing them to seize only evidence of a specific crime," namely, drug distribution. *See id.* (quoting *Morke*, 14 Va. App. at 501). For this reason, Mason has failed to carry his burden of overcoming the presumption of validity for judicially issued warrants.

### III. The Forthwith Requirement

Last, Mason argues that the warrant was stale because it was not executed in a timely manner.

The Commonwealth mandates that all warrants be executed within fifteen days or not at all. Code § 19.2-56(A). This Code section also provides that "[t]he warrant shall command that the place be forthwith searched." Code § 19.2-56(A). In other words, warrants must be executed "with reasonable dispatch and without undue delay."[8] *Felton v. Commonwealth*, 56 Va. App. 43, 47 (2010) (quoting *Maye v. Commonwealth*, 44 Va. App. 463, 477 (2004)); *Turner v. Commonwealth*, 14 Va. App. 737, 743 (1992).

Whether a delay is "reasonable" for purposes of the statute depends on "the justification for and length of the delay." *Turner*, 14 Va. App. at 743. The statute does not require a search warrant to be executed "immediately or as soon as physically possible." *Id.* at 742. Instead, warrants must be executed "as soon as reasonably practical [and] while probable cause continues to exist." *Felton*, 56 Va. App. at 47 (alteration in original) (quoting *Maye*, 44 Va. App. at 477).

Logically, warrants must be "executed with some promptness in order to lessen the possibility that the facts upon which probable cause was initially based do not . . . dissipate[]."

---

[8] The statute does not create a presumption that all searches carried out within the fifteen-day period were conducted promptly because such a presumption would render the statute's "forthwith" language superfluous. *Turner*, 14 Va. App. at 742.

*Turner*, 14 Va. App. at 742 (quoting *United States v. Nepstead*, 424 F.2d 269, 271 (9th Cir. 1970)).  And whether probable cause has dissipated depends on "whether a delay between the warrant's issuance and execution has somehow vitiated the probable cause that existed when the warrant was issued." *Felton*, 56 Va. App. at 47-48.  In the context of the delayed execution of a warrant seeking controlled substances, analyzing whether probable cause has dissipated depends "on whether the criminal activity described in the affidavit was of a continuing nature." *Id.* at 48.

Here, the probable cause supporting the warrant was based on Alston's extensive six-month surveillance of Mason's drug-distribution enterprise.  During that period, Alston saw Mason going to and from his house in New Kent County and distributing illegal drugs in Richmond.  Alston submitted an affidavit with his warrant application detailing the six-month investigation.  Once the warrant was issued, Alston had to coordinate with officers across multiple jurisdictions before executing it.  The warrant was executed six days later, well within the fifteen-day limit provided in Code § 19.2-56(A).  Alston's coordination efforts provided a reasonable justification for the delay. *See Turner*, 14 Va. App. at 748.  And the continuing nature of Mason's illegal drug distribution was apparent.

On this record, the trial court did not err in concluding that the warrant was executed in a timely manner and that probable cause supported the search. *See Maye*, 44 Va. App. at 482 (affirming the denial of a motion to suppress evidence gathered pursuant to a warrant executed eleven days after its issuance).

CONCLUSION

We hold that the trial court did not err by denying Mason's motion to suppress the evidence found in the search conducted pursuant to the warrant. Consequently, the conviction entered on his conditional guilty plea is affirmed.

*Affirmed.*